## Walgreen Company, Appellee, v. Charles H. Garland, Appellant.

### Gen. No. 42,512.

Heard in the third division of this court for the first district at the September term, 1942. Opinion filed December 9, 1942.

Frank M. Opeka, of Chicago, for appellant.

WOLFF, KEANE & GOMBERG and GEORGE E. ARTHUR, all of Chicago, for appellee; OSCAR M. WOLFF, THOMAS E. KEANE, GEORGE E. ARTHUR and JULIAN TISHLER, all of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

An appeal was taken, by the defendant in a mandamus proceeding, from a judgment order for the plaintiff, direct to the Supreme Court, and that court upon consideration reached the conclusion that the matter was properly one to be considered by the Appellate Court, and the cause was transferred to this court for the purpose of considering the questions that were involved in this case.

The action is for mandamus and was instituted by Walgreen Co. against Charles H. Garland, as Mayor and Local Liquor Control Commissioner of the City of Des Plaines, Illinois to compel the defendant to issue a Class B bulk sales retail liquor license, as designated in the city ordinance, which would authorize the plaintiff to sell at retail in its premises alcoholic liquors in original packages for consumption off the premises.

Originally the action was brought jointly with a complaint for injunction and the pleadings consisted of two counts the first of which was a petition for mandamus and the second count a complaint for injunction. It would appear from the suggestions offered by the parties to this appeal that they are only concerned regarding the first question, in other words, the petition for mandamus.

The petition alleges that the plaintiff is a corporation engaged in the business of vending drugs, other goods, wares and merchandise at 1485 Ellinwood avenue, Des Plaines, Illinois; that it had heretofore engaged in and expected to continue the sale of alcoholic liquor under license; that it is possessed of all of

the qualifications for the issuance of a license; that application had been made and the required fee deposited as provided by the city ordinance, which ordinance as plaintiff's exhibit 1 is set out in full. It is further alleged that the defendant refused to grant a license as requested, his refusal being predicated upon that part of section 5 of the ordinance which reads as follows:

"In the interest of public welfare and good morals and in order to prevent and lessen the possibility of minors purchasing alcoholic liquor, no Class B license shall be issued to any person, firm or corporation who deals in, or sells any other food-stuffs, goods, wares or merchandise (soft drinks for consumption off the premises where sold excepted)."

The petition further alleges that the action on the part of the defendant was in contravention of the Fourteenth Amendment to the Constitution of the United States of America and section 2 of Article II of the Constitution of the State of Illinois. It is alleged by the plaintiff that it was denied the equal protection of the law; that the ordinance is inconsistent and violates the provisions of the Illinois Liquor Control Law; and that it does not constitute proper exercise of the police power.

The answer to this petition, filed by the defendant, in effect alleges that the plaintiff has no vested rights to a license and that the ordinance does not contravene the Constitution of the United States or that of the State of Illinois and that it is not discriminating, unreasonable, capricious or contrary to State law, and they urge that the State law specifically vested the City of Des Plaines with the power to establish restrictions and regulations on licenses as public good and convenience may require. The answer, in effect, alleges that the plaintiff has no vested rights.

The reply of the plaintiff to the answer denies that the law intended to vest in cities and villages the

power to establish rules and regulations as public good may require, but granted only such powers not inconsistent with law, and that such powers are further limited by the proviso of section 1, Article VI, which reads as follows:

"Provided, that in the exercise of any of the powers granted in this section (section 1, Article VI) the issuance of such licenses shall not be prohibited, except for reasons specifically enumerated in sections 2, 8, 8a and 21 of Article VI of this act."

Plaintiff further denies that it was the express intention of the legislature to vest in cities and villages power to regulate to protect the public health, welfare and morals of such communities, but that the intent is to be gathered from the entire act.

The parties signed and filed a stipulation of fact. It was stipulated that the plaintiff had made a proper tender of the license fee and that this tender had been kept continuously good; that the plaintiff at the time of its application and at all times since was possessed of all the qualifications required by the statutes of the State of Illinois and the ordinance of the City of Des Plaines for the issuance of a Class B license, except in so far as the plaintiff may be disqualified by the second paragraph of section 5 of the ordinance of December 13, 1941; that the validity or invalidity of this second paragraph is the only issue in this case and that pending a decision in the mandamus case the plaintiff without the acquiescence of defendant continued to sell liquor in sealed containers for consumption off the premises where sold and that these sales were made under and by virtue of the temporary writ of injunction issued on January 12, 1942 by the superior court of Cook county.

The plaintiff in this action contends that the defendant's argument is based upon the theory that the prohibition contained in section 5 of its ordinance of De-

cember 13, 1941, is merely a reasonable regulation of the liquor business which is within the police power of the city.

Plaintiff contends and answers that the intent of section 1 of Article IV of the Liquor Control Act is clear and unambiguous, and urges that a municipality which permits the sale of liquor under a licensing ordinance has no power or right to prohibit the issuance of a license for reasons not specified in the Liquor Control Act itself.

Our attention is called to the final clauses of section 1 of Article IV of the statute, which states that the municipality shall have the power

"to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require; provided, however, that in the exercise of any of the powers granted in this section, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in sections 2, 8, 8a and 21 of Article VI of this act."

and in the briefs of both plaintiff and defendant this section 1 of the statute is quoted. The section, commencing as follows:

"Section 1. In every city, village or incorporated town, the city council or president and board of trustees, and in counties in respect of territory outside the limits of any such city, village or incorporated town the county board shall have the power by general ordinance or resolution"

then states certain powers which may be restated as follows:

(1) To determine the number, kind, and classification of licenses for the sale at retail of alcoholic liquor not inconsistent with this act;

(2) To determine the amount of the local license fees to be paid for the various kinds of licenses;

(3)  To determine the manner of the distribution of such fees after their collection;

(4)  To prohibit any woman or minor other than a licensee, or the wife of a licensee, from drawing or mixing any alcoholic liquor as an employee of a retail licensee;

(5)  To prohibit any minor from, at any time, attending any bar;

(6)  To prohibit any minor any time from drawing or mixing any alcoholic liquor in any licensed retail premises;

(7)  To establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and conscience may require.

These constitute all the powers granted by the Article VI.

The amendment of the law effected in 1941 says that in the exercise of these powers the issuance of licenses shall not be prohibited "except for the reasons specifically enumerated" in certain sections of Article VI of the Liquor Control Act. The plaintiff then contends that section 1, so far as the regulatory provision is concerned means that, "in the exercise of the power to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in sections 2, 8, 8a and 21 of Article VI of this act," and contends that this section can have no other meaning and that the amendment is an express limitation upon the powers conferred by this section, and suggests that the four sections of Article VI are made a measuring stick by which license applications are to be tested by all the municipalities of the State. Nothing in Article VI prohibits the issuance of a retail liquor license to an applicant who is engaged in the

sale of foodstuffs or other merchandise. Section 5 of the ordinance of the City of Des Plaines does contain such a prohibition. The ordinance contravenes section 1 of Article VI of the statute and it is contended by the plaintiff that that exercise is beyond the power of the municipality.

In support of the suggestion offered by the plaintiff, our attention is called to the case of *Walgreen Co. v. Lenane,* 363 Ill. 628. The city of Quincy passed an ordinance which provided that no corporation should receive a license to sell liquor in Quincy unless the corporation had its home office in that city or a majority of its stockholders lived there. The Walgreen Company applied for a license to sell liquor. This license was refused. Noncompliance with the foregoing provision of the ordinance was the sole ground for refusing the license to the Walgreen Company. The Walgreen Company filed a petition for mandamus and the writ was awarded. The Supreme Court sustained the judgment of the trial court. It appears from the suggestion offered by the plaintiff that in affirming the judgment of the trial court the Supreme Court refers to Article IV of the Liquor Control Act and then says that it is clear from section 2 of Article VI of the act that the legislature intended that corporations which conformed to the statutory requirements shall be licensed. The court calls attention to the language of the statute which provides that no license shall be issued to a corporation if any officers, manager, or director thereof, or any stockholder or stockholders owning in aggregate more than 5 per cent of the stock of the corporation, would not be eligible to receive a license for any reason other than citizenship and residence within the political subdivision; that the Supreme Court on page 630 says, "The ordinance contravenes the statute by attempting to place further restrictions on the licensing of corporations contrary to those expressly stated in the act." It appears that

the *Lenane* case which was called to our attention was decided in 1936. In 1941 the legislature adopted the amendment to section 1 of Article IV, which expressly prohibits municipalities from adding licensing restrictions which are not specifically enumerated in Article VI of the statute. Thus the plaintiff urges that there is even less basis to sustain the Des Plaines ordinance than existed in 1936 when the *Lenane* case involving the Quincy ordinance was decided.

The defendant, however, contends that the restriction on the issuance of the instant license is not a prohibition but is a regulation for the good and convenience; that in keeping with the spirit of the ordinance the defendant by letter (plaintiff's exhibit 3) advised the plaintiff that a license would issue upon the condition that the liquor department be segregated from the remainder of its store, and calls attention to the case entitled *O'Connor v. Rathje*, 368 Ill. 83, wherein the court said, at page 86:

"The dram shop law was enacted pursuant to the police power of the State. It was pointed out in *Barbier v. Connolly*, 113 U. S. 27, that neither the Fourteenth Amendment nor any other amendment of the Federal Constitution was designed to interfere with the power to prescribe regulations to promote health, peace, morals, education and good order of the people. Legislation respecting the liquor traffic does not come within the Fourteenth Amendment unless it is apparent that its real object is not to protect the community or to promote the general well-being but under the guise of police regulation to deprive the owner of his liberty, or property without due process of law."

The defendant urges that the sale of alcoholic liquor can only be made under legal restriction, citing Ill. Rev. Stat. 1941, ch. 43, par. 10, and *People v. Harrison*, 256 Ill. 102, in which at page 106, our Supreme Court said:

". . . The business of selling intoxicating liquor is attended with danger to the community and is a recognized subject for regulation by the police power of the State. There is no inherent right to carry it on, and it may be entirely prohibited. The manner and extent of its regulation, if to be carried on at all, are to be determined by the State, so as to limit, as far as possible the evils arising from it. . . ."

Defendant further argues that no civil right, but only a privilege is denied by refusal to grant a liquor license (citing Ill. Rev. Stat. 1941, ch. 43, par. 119 [Jones Ill. Stats. Ann. 68.026]), and that the right to acquire a license to maintain a dram shop is not a civil right, and therefore not a vested right; that it is only a privilege granted under the statutes of this State and the ordinances of cities and villages. Defendant cites, in support of his theory of the case, *People ex rel. Morrison v. Cregier,* 138 Ill. 401, in which the court said:

"The tendency of the liquor traffic is so completely shown by all human experience, that from an early day said traffic has been subjected in this State to the surveillance and control of the police power and we presume such has been the case in most if not all civilized communities. The right therefore, to engage in this business and to be protected by the law in its prosecution can no longer be claimed as a common law right, but is a right which can be exercised only in the manner and upon the terms which the statute prescribes. The refusal to license deprives no man of any personal or property right but merely deprives him of a privilege which it is in the discretion of the municipal authorities to grant or withhold. . . ."

The defendant also relies, as is suggested by the plaintiff, principally upon the case of *Great Atlantic & Pacific Tea Co. v. Mayor & Commissioners of City of Danville,* 367 Ill. 310, decided by the Supreme Court October 22, 1937, rehearing denied December 9, 1937.

In that case the city of Danville adopted an ordinance regulating the sale of alcoholic beverages. Article 8 of the ordinance provided for Class B licenses to authorize the retail sale of malt beverages in containers for consumption on the premises where sold. The ordinance states: "In the interest of public policy and morals no retail liquor license shall be granted to any firm, corporation, or person whose principal business is the sale at retail of grocery and/or meat products." It is further suggested that the A. & P. Tea Company applied for a Class B license. This was refused on the sole ground that the principal business of the Tea Company is the retail sale of grocery and meat products. The Tea Company filed a petition for mandamus and the writ was allowed by the trial court. Upon appeal the Supreme Court held that the ordinance denying to grocers and meat dealers the right to sell malt beverages was a reasonable exercise of the power granted to the municipality by section 1 of Article IV of the Liquor Control Act, as the section then read.

The plaintiff urges that there are at least three reasons why the Danville case is no longer an authority on the point here involved. In the first place section 1 of Article IV of the Liquor Control Act gives municipalities the right to adopt regulations "not inconsistent with law." In 1937 the Supreme Court construed the ordinance provision that licenses should not be issued to grocers or meat dealers as not "inconsistent with law." In 1941 this condition was changed by act of the legislature. When the legislature amended section 1 of Article IV of the Liquor Control Act to provide that municipalities should not prohibit the issuance of licenses for reasons not specified in the act, an ordinance provision prohibiting the issuance of a license to grocers or meat dealers became "inconsistent with law." This necessarily follows by reason of the wording of the amendment of 1941, and the further fact

that the Liquor Control Act contains no prohibition against the issuance of licenses to grocers and meat dealers. The legal situation in December 1941, when the Des Plaines ordinance was adopted was entirely different from that which existed when the *Danville* case was decided in 1937.

It is further contended by the plaintiff that the legislature in adopting an amendment acts with reference to, and knowledge of, all conditions in the state as they exist at the date when the law is amended. In 1941 the legislature had knowledge of the Danville ordinance and the Supreme Court ruling thereon. The *Danville* case held that municipalities might prohibit the issuance of licenses on grounds not included in the Liquor Control Act. The statutory amendment of 1941 provides specifically that municipalities shall not prohibit the issuance of licenses on grounds not included within the Liquor Control Act. The statute passed subsequent to the decision of the *Danville* case is controlling; and, finally, the *Danville* case itself answers the argument of defendant in support of the Des Plaines ordinance. On page 314 of the *Danville* case the court said: "The power to regulate the sale of alcoholic beverages by municipalities is not unlimited. The only power they have in such respect is conferred by the Liquor Control Act of 1934." When we come to 1941 and the Des Plaines ordinance, the Liquor Control Act has been amended to prohibit municipalities from placing restrictions upon the issuance of licenses, additional to those contained in the act itself.

So, when we come to consider the suggestions that are offered, it is apparent that the legislative act provided for the powers that were granted, and by the terms of the various powers it appears that there is no language in Article VI of the act that grants powers to the various municipalities other than to follow and be guided by the controls that are provided for in this amendment to the act in Article VI.

The defendant, however, claims that, under the Illinois Liquor Control Act, it and other municipalities of the State have broad powers of regulation and broad police powers over the sale of liquor within the boundaries of the municipalities, and claim this power particularly under the next to the last clause of section 1 of Article IV of the act, which reads that each municipality shall have power, "to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require."

The plaintiff agrees with the defendant that whatever power of regulation a municipality has exists by virtue of the grants of powers contained in the Liquor Control Act, but says that this grant of regulation does not go so far as to permit the municipalities to refuse to permit the issuance of licenses on grounds not specified in Article VI of the act.

And further it is the contention of the plaintiff that the general right of regulation by municipalities by no means is as broad as the defendant contends, and quote from *Great Atlantic & Pacific Tea Co. v. Mayor & Commissioners of City of Danville*, 367 Ill. 310, where the court says:

"The power to regulate the sale of alcoholic beverages by municipalities is not unlimited. The only power they have in such respect is conferred by the Liquor Control Act of 1934."

The defendant agrees with the plaintiff that a municipality has only such powers as are expressly given by the legislature. The authority to provide regulations and restrictions upon the issuance of local licenses to sell alcoholic liquors, consistent with law and as the public good and convenience may require, is derived from section 1 of Article IV of ch. 43, par. 110 of the Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 68.017],

which provides for the powers that are granted to the villages and incorporated towns in the county and provides in effect that in every city and village or incorporated town the city council or president and board of trustees, and in counties in respect of territory outside of the limits of such city, village, or incorporated town, the county board shall have the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this act and the amount of the local license fees to be paid for the various kinds of licenses to be issued in their political subdivision and the manner of distribution of such fees after their collection; to prohibit any woman or minor, other than a licensee or the wife of a licensee, from drawing, pouring or mixing any alcoholic liquor as any employee of any retail licensee; and to prohibit any minor from at any time attending any bar and from drawing, pouring or mixing any alcoholic liquor in any licensed retail premises; and to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require; and it then goes on to provide that ''in the exercise of any of the powers granted in this section, the issuance of such license shall not be prohibited except for reasons specifically enumerated in Sections 2, 8, 8a and 21 of Article VI of this Act.''

The defendant, however, contends that the provision in this act was enacted by amendment in 1941, and that the words ''to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law as the public good and convenience may require'' of the act prior to the 1941 amendment were not changed and remained as a part of the act, and contends that, therefore, the addition of the proviso does not affect the

powers granted to the cities by the restriction of local licensing but merely provides under what circumstances a license may be strictly prohibited.

However, that does not meet the question that we are considering, and that is whether the defendant had the right to provide by its ordinance a regulation that is not a part of the powers granted to the City of Des Plaines, the ordinance of which is here the subject of consideration.

While it is true that the legislature intended that the city councils of these various organizations shall, in some measure, have a discretion in passing upon problems peculiar to their own community, that, as we said before, is controlled by the powers granted.

The plaintiffs cite the case of *City of Fairfield v. Pappas*, 362 Ill. 80, 83. Pappas was convicted of selling intoxicating liquor in Fairfield in violation of an ordinance of that city effective May 15, 1933. The ordinance prohibited the sale of intoxicating liquor within the city. Pappas appealed from the judgment of conviction. The Supreme Court discussed the ordinance of Fairfield prohibiting the sale of liquor within the city in connection with the Illinois Liquor Control Act of 1934, and points out that Article IX of the act provides that, in municipalities having a population of 200,000 or less, the question of prohibiting the sale of alcoholic liquor may be submitted to vote and that, if a majority of the voters voting upon such proposition are in favor of the prohibition, then such sale shall actually be prohibited. The plaintiff here contends that the only method which the legislature intended to grant to municipalities by which the sale of intoxicating liquor could be prohibited is by the act of the voters of the municipality voting in favor of prohibition. However, in the *Pappas* case the validity of the ordinance was the only question at issue before the Supreme Court. In holding the ordinance void and reversing the judgment of conviction, the Supreme Court said, at page 83:

"It is elementary that the licensing, regulating and prohibiting the traffic in intoxicating liquor is reposed in the police power of the State. The State may reserve the power within itself or delegate it to such municipalities and political subdivisions as the legislative body of the State may deem proper. The granting of such power to such municipalities and political subdivisions is not absolute and perpetual but is revocable at the legislative will. The State may resume such powers and thereafter re-delegate the same or only a part thereof, to be exercised in accordance with the terms of the legislative grant. (*Dingman v. People*, 51 Ill. 277)."

After consideration of the various questions that have been called to our attention, and having determined the questions as they appear from our opinion, we believe that the court was fully justified in entering the order directing the clerk of the court to issue the writ of mandamus as prayed for in the petition, directed against Charles H. Garland, as Mayor and Local Liquor Control Commissioner of the City of Des Plaines, Illinois, commanding said Charles H. Garland forthwith to approve the application of the plaintiff for a Class B bulk sales dealer's license to sell alcoholic liquors at retail in the plaintiff's store known and described as 1485 Ellinwood, Des Plaines, Illinois, and that the said Charles H. Garland forthwith issue to plaintiff said bulk sales liquor license to sell alcoholic liquors at retail in plaintiff's store premises known and described as 1485 Ellinwood, Des Plaines, Illinois, for the period commencing January 1, 1942 and ending December 31, 1942. We believe that the court did not err in the entry of the order, and it is therefore affirmed.

*Affirmed.*

BURKE, P. J., and KILEY, J., concur.