Love O. Apperson and Carolyn Apperson; People of the City of Champaign, Illinois, for use of Love O. Apperson, Appellants, v. Hartford Accident and Indemnity Company and Gus R. Fulmer, Appellees.

Gen. No. 9,416.

Heard in this court at the October term, 1943. Opinion filed April 12, 1944.

CARSON & APPLEMAN, F. T. CARSON and JOHN ALAN APPLEMAN, all of Urbana, for appellant.

DOBBINS, DOBBINS & THOMAS, of Champaign, for certain appellee.

MR. JUSTICE RIESS delivered the opinion of the court.

The plaintiffs appellants have perfected an appeal to this court from a judgment entered pursuant to an order of the circuit court of Champaign county sustaining a motion of the defendants appellees to dismiss Counts IX and X of appellants' second amended complaint in a suit at law seeking recovery of civil damages under the penal provisions of a dram shop licensee's bond given under the provisions of an ordinance of the City of Champaign, Illinois. Appellants seek reversal of the judgment in bar of suit on said counts and remandment of the cause to the trial court for further proceedings. A written opinion was filed by the court which appears in the abstract. In addition to the record and abstract filed by the appellants, an additional abstract with assignments of cross-error was filed by the appellees based upon certain rulings of the court on the pleadings. Appellants filed a motion to strike the additional abstract and assignment of cross-errors and the appellees filed written objections thereto, which motion and objections were taken by the court with the case and will be ruled upon herein.

It appears from the record that on April 30, 1941, a bond in the penal sum of $2,000, with J. Max Cline and Gus R. Fulmer as principals and the Hartford Accident and Indemnity Company, a corporation, as sureties, was filed with the Liquor Control Commission of the City of Champaign, under certain provisions of City Ordinance No. 386 of said city, with application of said principals for a retail liquor license to sell intoxicants in their place of business, known as the "Dreamland Cafe" in said city.

The ordinance contained the following provisions concerning the bond in question: "Before any license is issued applicant shall file with the local Liquor Control Commission a joint and several bond executed by good and sufficient sureties, residing, or licensed to do business within the State of Illinois running to the City of Champaign, Illinois for the benefit of any persons interested, in the penal sum of $2,000 which license Class A, B and C, and $1,000 for all other licenses conditioned upon the true and faithful compliance by said applicant or licensee, with all the provisions of this ordinance and State Laws of Illinois that may be in force during the period said bond is in effect." The bond covered the period during which the alleged cause of action arose herein on to-wit: September 16, 1941 and contained the usual penal forfeiture clause, in the sum of $2,000 executed by said principals and surety binding them severally and jointly to pay the same to the City of Champaign. The further condition thereof provided that the principals "shall honestly and faithfully conduct their Retail Liquor business in conformity with all and such declarations as set forth by them in their application for license, and in conformity with the provisions of the State law entitled 'An Act Relating to Alcoholic Liquors,' in force February 1, 1934, and all amendments thereto, and comply with all provisions of said Act as well as of all the provisions of the Liquor

Control Ordinance No. 386 of the City of Champaign, and all amendments thereto, and the regulations of the local Liquor Control Commissioner, then this obligation is void, otherwise to remain in full force and effect."

The said Counts IX and X of the complaint further set forth section 131 of chapter 43 of Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 68.038], which provides that "No licensee shall sell, give or deliver alcoholic liquor to any minor, or to any intoxicated person or to any person known by him to be an habitual drunkard, spendthrift or insane, feeble-minded or distracted person."

A breach of the conditions of the bond is alleged to have occurred on September 16, 1941, by the sale of alcoholic liquors by J. Max Cline to one Eugene Eastin, a minor, which liquors were consumed upon said premises and caused the intoxication of said minor; that said minor, as a proximate result of said intoxication so resulting from the sale of said intoxicants, negligently and carelessly drove his automobile across a certain street intersection, striking and injuring usee plaintiff appellant, Love O. Apperson, a policeman of said city then and there engaged in the performance of his duties as a traffic officer at the intersection of Cunningham avenue and Vine street of said city, whereby he received serious bodily injuries and expended moneys in endeavoring to be cured. The *ad damnum* clause recited that the People of the City of Champaign, Illinois, prayed damages against the Defendant Gus R. Fulmer for the use of Love O. Apperson in the sum of $2,000 under Count IX and a similar sum against the Hartford Accident and Indemnity Company, so prayed for by the People of the City of Champaign for the use of Love O. Apperson with costs of suit under Count X of the second amended complaint.

It further appears that an amicable settlement of an alleged cause of action against Bertha Euphrasia Reynolds, Edward F. G. Hessel and O. Clark Hessel, as joint owners of the dramshop premises, had been made, and said persons had been dismissed as defendants to the said suit, upon the execution of a covenant not to sue; that Counts IX and X were predicated upon an alleged right of recovery of personal damages under the terms of said penal bond by the city against said Defendants Fulmer and the Indemnity Company for the use of said Apperson; that the said Indemnity Company was joined in the second amended complaint as an additional defendant, upon whom summons was served and returned on June 23, 1942, without the order of court granting leave to amend expressly permitting added defendants to be joined.

Said defendants had on July 20, 1942, filed motions under limited appearances praying that said added Counts IX and X be stricken as having been filed without requisite leave of court, which motions were denied. Thereupon, several motions were filed by said defendants in the nature of special demurrers setting up that the bond sued upon ran only in favor of the People of Champaign and not to said People for the use of Love O. Apperson as a person beneficially interested thereunder; that said bond is penal in its nature and provides for no civil relief to the city or to said Apperson; that the ordinance in question is void as going beyond the power and authority lodged in said city by the General Assembly or Constitution of Illinois; that no primary liability has been fixed against the joint principals Cline and Fulmer and no cause of action upon the bond was stated against either defendant and prayed dismissal of said Counts IX and X and judgment thereon. The motions were duly heard by the court and taken under advisement

and thereafter, on March 15, 1943, the motions were allowed as to said counts, followed by their dismissal and the judgment herein appealed from.

In the written opinion, the court held that "The City of Champaign had no right under the Statutes of Illinois to require the filing of a bond for the benefit of persons situated as is the present Plaintiff as a condition precedent to the issuance of a license. Therefore, so construed, the ordinance is invalid. If it is invalid, it cannot be read into the bond to broaden the scope of the bond. There can be no recovery upon the bond in the present case as a common law bond; not because of the admitted fact that there is no statutory provision for such a bond, but because the language of the bond itself discloses no intention that the bond shall be for the benefit of persons claiming a cause of action under the Dram Shop Act."

Paragraph 135 of chapter 43, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 68.042] creates a right of action "severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication in whole or in part, of such person; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, . . . , shall be liable . . . for all damages sustained, and for exemplary damages" to any person "who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise . . . ."

Section 94, chapter 43, *supra,* provides for a liberal construction of the provisions of the Liquor Control Act. The right of action against the dramshop keeper or owner of the property for damages proximately resulting from the sale of liquor in violation of the provisions of section 135 of said act has been frequently sustained by the courts of review of this State

and is not in question here. Nor do appellees question the appellants' contention that said provision, "is remedial in character and should be so construed as to suppress the mischief involved and advance the remedy therein provided," citing *Hyba v. C. A. Horneman, Inc.*, 302 Ill. App. 143, 23 N. E. (2d) 564; *Klopp v. Benevolent Protective Order of Elks*, 309 Ill. App. 145, 33 N. E. (2d) 161; *Lester v. Bugni*, 316 Ill. App. 19, 44 N. E. (2d) 68. However, we do not deem the above provisions and citations to be applicable to or controlling under the facts and issues arising in this proceeding.

The section of the Liquor Control Act of 1934 (Ill. Rev. Stat., ch. 43, sec. 110 [Jones Ill. Stats. Ann. 68.017]) under which Ordinance No. 386 was drawn provides in substance that cities, villages and incorporated towns shall have power by general ordinance or resolution to determine the number, kind and classification of licenses for sale at retail of alcoholic liquors not inconsistent with this act and the amount of the local license fees to be paid and to establish such further regulations and restrictions upon the issuance of and operation under local licenses not inconsistent with law, as the public good and convenience may require. By an amendment to said section, effective July 1941, it was "provided, however, that in the exercise of any of the powers granted in this section, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in Section 2, 8, 8a and 21 of Article VI of this Act." This amendment was construed by this court (first district) in the case of *Walgreen Co. v. Garland*, 316 Ill. App. 635, 45 N. E. (2d) 545, wherein it was held, p. 645, that "the Liquor Control Act has been amended to prohibit municipalities from placing restrictions upon the issuance of licenses, additional to those contained in the act itself . . . it is apparent that the legislative act provided for the powers that were granted, and by

the terms of the various powers it appears that there is no language in Article VI of the act that grants powers to the various municipalities other than to follow and be guided by the controls that are provided for in this amendment to the act in Article VI.'' The amendment of 1941 restricted both the provisions of the original act and the right of the city to enact ordinances thereunder and in effect rendered void any conflicting provisions of any existing ordinance. *Retail Liquor Dealers Protective Ass'n v. Schreiber,* 382 Ill. 454, 47 N. E. (2d) 462 (1943).

In the instant case, under Counts IX and X in controversy, the suit is not based upon paragraph 135 of chapter 43, of the Liquor Control Act, providing a right of action against the licensees and lessor owners by the injured person in a direct statutory proceeding, but the recovery is sought upon the bond filed with the Liquor Control Commission of the city under the provisions of an ordinance which allegedly seeks to create and the plaintiffs appellants herein seek to plead a civil liability in favor of a third person based upon the provisions of said bond and ordinance. It will be noted that the bond in express terms runs in favor of the People of the City of Champaign only. It does not run to the People of the City of Champaign for the use of Love O. Apperson, or to the People of the City of Champaign for the benefit of any persons interested, or to the City of Champaign for the benefit of any persons interested.

Under the Dram Shop Act of 1874, long since superseded by subsequent acts and provisions in the construction of which a number of cases have been cited, it will be noted that said former act specifically provided that (Ill. Rev. Stat. 1874, ch. 43, sec. 5):

''Bond-How Taken-Suit on. No person shall be licensed to keep a dram shop, or to sell intoxicating liquors, by any county board, or the authorities of any city, town or village, unless he shall first give bond in

the penal sum of $3,000, payable to the People of the State of Illinois, with at least two good and sufficient sureties, . . . conditioned that he will pay to all persons all damages that they may sustain, either in person or property, or means of support, by reason of the person so obtaining a license selling or giving away intoxicating liquors. . . . Any bond taken pursuant to this section may be sued upon for the use of any person, or his legal representatives, who may be injured by reason of the selling or giving away any intoxicating liquor by the person so licensed, or by his agent or servant."

No such bond is provided for or required to be given by retail licensees under the Liquor Control Act of 1934, nor any amendment thereto, nor is any express power delegated to the city to require that a bond be given to indemnify individual persons against such civil damages, as was provided for and required by the old act. The legislature well knew that the former act made such provisions, but the same were omitted from the present law and cannot be read into the act by the court, thereby creating an added civil liability to third persons upon the bond without express delega-tion to the city council by the legislature of authority to make such provisions or requirements by an ordi-nance. The city power is a delegated authority and even though liberally construed, is no broader than the power and authority delegated by the act. As stated by the Supreme Court in the case of *City of Fairfield v. Pappas,* 362 Ill. 80, 199 N. E. 292: "Such revision discloses an intent to reject such of the pro-visions of the former act as are not included in the latter act." Had the legislature intended to delegate to a municipality the power to require as a condition precedent to the issuance of a retail liquor license that the licensee furnish a bond providing indemnity against loss or damage incurred by a third person under the provisions of section 135 of the Liquor Con-

trol Act of 1934, it might readily have enacted a similar provision to that contained in the prior act of 1874. Having failed to enact or include a similar provision and delegation of power, in the present act, this Court cannot so construe the same as to include the omitted or rejected provisions. Such authority, if granted, must be procured by legislative enactment and not by judicial construction.

It is further contended by the appellants that even in the absence of an express grant of power to the municipality under the general language of section 110, *supra,* "it is well settled that such power would exist under the general police powers inherent in a municipality." In support thereof, several cases are cited wherein the police powers of the State in the regulation of matters of public health, occupations and employment are discussed, including some cases under differing statutes from foreign jurisdictions, which we do not consider applicable to the precise issues and facts presented herein. While power to regulate and control the conduct of liquor or dram shop business is inherent among the police powers of the State (*City of Fairfield v. Pappas, supra*) power of control and regulation of the conduct of such business within the boundaries of a municipality must be derived from a legislative grant of that power by the State. Concerning the application of the above principles in construing the Liquor Control Act of 1934, it was said by our Supreme Court in the case of *Walgreen Co. v. Lenane,* 363 Ill. 628, 2 N. E. (2d) 894 (1936) that "The only powers municipalities have to control the retail liquor business are conferred by the Liquor Control Act of 1934," citing therein with approval the case of the *City of Fairfield v. Pappas, supra.* Similarly, the above court, in the case of *Great A. & P. Tea Co. v. Mayor & Commissioners of City of Danville,* 367 Ill. 310, 11 N. E. (2d) 388 (1937), while recognizing that the regulation, control and restriction of the liquor

traffic rests within the police powers of the State, again held that (p. 314) "The power to regulate the sale of alcoholic beverages by municipalities is not unlimited. The only power they have in such respect is conferred by the Liquor Control Act of 1934," and further citing *City of Fairfield v. Pappas, supra,* stated that in the latter case, "we held that the Liquor Control Act of 1934 (still in force) repealed section 46 of Article 5 of the cities and villages act, which, without limitation, had given cities and villages the right to license, regulate and prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor . . . . The rights of cities and villages are now subject to the state law with respect to the prohibition and regulation of the sale of alcoholic beverages as contained in the Liquor Control Act." In the recent case of *Retail Liquor Dealers Protective Ass'n v. Schreiber,* 382 Ill. 454, 47 N. E. (2d) 462 (1943), in discussing an ordinance of the City of Chicago, it was said concerning the effect of the amendment of 1941, *supra,* that the validity of the ordinance in question was not therein important, since (p. 460) "the ordinance is superseded by the amendment to the Liquor Control Act hereinbefore referred to, which, if valid, prevents this remedy."

Appellees do not herein refute and we do not undertake to pass upon the validity of the bond as an enforceable obligation in favor of the obligee therein expressly named for alleged noncompliance with its terms of a penal nature, and subject to forfeiture, on which conditions the license was granted. It is denied, however, that the bond provides civil indemnities or is legally enforceable in favor of a third person not named nor otherwise expressly designated therein under any power inherent in or delegated to the city by the Liquor Control Act of 1934. In so holding, the trial court did not err.

Appellants have cited several cases, which we deem to be exceptions to the general rule concerning the nonliability of obligors to unnamed and undesignated obligees not a party to the bond. Among them are bonds of public officers. The object of requiring such official bonds is to obtain indemnity against the use of an official position for wrongful acts done under color of office. *City of Cairo v. Sheehan*, 173 Ill. App. 464; *People of the Village of Moweaqua v. Morgan*, 188 Ill. App. 250. Or to secure the faithful performance of official duties by public officers. *East St. Louis v. Flannigan*, 26 Ill. App. 449. Other cited exceptions to the general rule are not applicable to the provisions of the compliance bond given herein under the limited powers delegated to the municipality by the terms and provisions of the present Liquor Control Act, which we have fully discussed and passed upon herein.

There can be no recovery upon the bond in this case as a common-law bond, since the language of the bond itself discloses no intention that it was given for the benefit of the appellants or any person other than the obligee expressly named therein and recites only that the obligors ''are held and firmly bound unto the People of the City of Champaign in the penal sum of Two Thousand Dollars.'' It neither names, refers to nor designates any usee, nor does it set forth any express provision for recovery of civil damages for injury to the person, property or means of support of any person whatsoever. The trial court did not err in the holding that the plaintiffs appellants were not entitled to recover under its terms as a common-law bond.

To the further contention that the defendants are estopped from denying liability under terms of the bond executed by them, it need only be said that the bond, as construed by the trial court and by this court, does not undertake to indemnify third persons against damages under section 135 of the Liquor Control Act. We hold with the trial court that such a construction,

if given to the ordinance would render the provisions thereof invalid. We see no merit in the above contention.

We have reserved ruling and taken with the case the motion of appellants to strike defendants appellees additional abstract and cross-errors therewith assigned, which additional abstract sets forth certain motions and the rulings of the trial court thereon. The motions had been filed by appellees under special and limited appearances and were denied by the trial court. The brief speaks of preserving the alleged cross-errors "out of an abundance of caution." No notice of cross-appeal had been given to appellants. Under Rule 35 of the Supreme Court, a notice of cross-appeal is mandatory and unless given, the matters sought to be so reviewed are not and cannot be preserved in the record for decision by this court upon appeal. Rule 1 of this court requires that a praecipe for additional parts of record be filed and our Rule 41 recites that "All matters not herein provided shall be governed by Rules of Practice and Procedure of the Supreme Court." The recent case of *Holmes v. Rolando,* decided by the fourth district of this court (320 Ill. App. 475, 478, 479, 51 N. E. (2d) 786) aptly discusses and adversely disposes of similar contentions to those of appellees in relation to a cross-appeal. Appellees' objections are overruled. Appellants' motion to strike the additional abstract and assignments of cross-error is allowed and same are stricken.

The statutory right of action under section 135 in a direct proceeding against the licensees for the recovery of damages, if any exists, is wholly unaffected by this suit and the decision of the trial court denying the right to enforce his unliquidated claim against the surety on the licensee's bond under Counts IX and X of his amended complaint does not deprive appellants of any material benefit inuring to them by virtue of any statutory right of action which he may have under

the provisions of section 135 of the Liquor Control Act of 1934.

From a review and consideration of the entire record, and assignments of error herein, we hold that no prejudicial nor reversible error appears in the record. The judgment of the trial court is therefore affirmed.

*Affirmed.*