CHEETAH ENTERPRISES, INC., Plaintiff-Appellant, *v.* THE COUNTY OF LAKE *et al.*, Defendants-Appellees.

(No. 73-157;

Second District—September 24, 1974.

307

Ray, Glick & Assoc., of Libertyville, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Julius Abler, Assistant State's Attorney, of counsel), for appellees.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff operates a tavern and night club known as Cheetah II in unincorporated territory of Lake County, Illinois. Its entertainment features nude dancing.

The defendant, the County Board of Lake County, passed a resolution amending its liquor control ordinance, renumbering the former section 30 thereof as section 31 and inserting new material as section 30. The ordinance provides:

"NOW, THEREFORE, BE IT RESOLVED, by this County Board of Lake County, Illinois, that the Lake County Liquor Control Ordinance adopted by the Board of Supervisors October 10, 1961, as amended, be and it is further amended, as follows:

SECTION 30—Delete '30' and insert '31'.

Insert SECTION 30, to read as follows:

'The following kinds of conduct on premises in this County licensed to sell alcoholic liquor, are prohibited:

(1) The performance of acts, or simulated acts, of sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law.

(2) The actual or simulated touching, caressing or fondling on the breast, buttocks, anus, or genitals.

(3) The actual or simulated displaying of the breasts, pubic hair, anus, vulva or genitals.

(4) The permitting by a license of any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus.

(5) The displaying of films or pictures depicting acts, a live performance of which was prohibited by the regulations quoted above.'

DATED, at Waukegan, Lake County, Illinois, on this 13th day of February, A.D., 1973."

The plaintiff filed an action for a declaratory judgment, seeking to have the resolution declared void. The County filed a motion to dismiss the complaint which was granted, with the trial court making extensive and specific findings in its order of dismissal. Plaintiff appeals, contending that the resolution was beyond the powers delegated to the County by the State of Illinois. Alternatively, it contends that if the resolution is held to be within the authority of the County, it is unconstitutional under the 1st and 14th amendments to the United States Constitution granting freedom of expression and due process of law, and unconstitutional under similar provisions of the Illinois Constitution of 1970.

Plaintiff first argues that the County has no authority to prohibit nude dancing in dramshops because the enabling statute, section 1 of article IV of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 110), specifically limits the type of conduct which the County may proscribe and does not refer to nude dancing.

Section 1 of article IV provides, as pertinent:

> "* * * in counties in respect of territory outside the limits of any such city, village or incorporated town the county board shall have the power by general ordinance or resolution to determine the number, kind and classification of licenses, for sale at retail of alcoholic liquor not inconsistent with this Act and the amount of the local licensee fees to be paid for the various kinds of licenses to be issued in their political subdivision * * *; to prohibit any woman or minor, other than a licensee or the wife of a licensee, from drawing, pouring, or mixing any alcoholic liquor as an employee of any retail licensee; and to prohibit any minor from at any time attending any bar and from drawing, pouring or mixing any alcoholic liquor in any licensed retail premises; and to establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require; and to provide penalties for the violation of regulations and restrictions, including those made by county boards, relative to operation under local licenses; provided, however, that in the exercise of any of the powers granted in this section, the issuance of such licenses shall not be prohibited except for reasons specifically enumerated in Sections 2, 8, 8a and 21 of Article VI of this Act."

Sections 2, 8, 8a and 21 of article VI do not prohibit nude dancing. Section 2(7) of article VI (Ill. Rev. Stat. 1973, ch. 43, par. 120(7)) prohibits the issuance of liquor licenses to a person whose license has been revoked for cause. Section 5 of article VII (Ill. Rev. Stat. 1973, ch. 43, par. 149) provides for the revocation of a liquor license by the local liquor control commissioner if he determines that the licensee has violated any of the provisions of the Act or of any valid ordinance or resolution enacted by a county board or any rules or regulations established by the local liquor control commissioner or the State Liquor Control Commission.

■■ The power of a municipality to control the traffic in intoxicating liquors is derived entirely from the State and the municipality has only that power delegated to it and no other. (*Maywood-Proviso State Bank v. City of Oakbrook Terrace* (1966), 67 Ill.App.2d 280, 286.) The Liquor Control Act contains the delegation of this power to municipalities and prescribes the limits beyond which a municipality may not act; any

ordinance or act of a municipality beyond the legislative authorization of the Liquor Control Act is without legal force or validity. *Maywood-Proviso State Bank v. City of Oakbrook Terrace,* 67 Ill.App.2d 280, 286.

From this, plaintiff reasons that since the statute provides "the issuance of such licenses shall not be prohibited except for reasons specifically enumerated * * *" (Ill. Rev. Stat. 1973, ch. 43, par. 110), the county may not prohibit activities not specifically authorized to be prohibited by the Liquor Control Act. Plaintiff cites and relies upon *Heidenreich v. Ronske* (1962), 26 Ill.2d 360, and *Emm v. Sopher* (1961), 23 Ill.2d 376, in support of its argument.

The County responds that the proviso relied upon by the plaintiff refers only to the prohibition of the issuance of licenses rather than the regulation of the ongoing operation of dramshops; and that the legislative intention expressed in the language of section 1 of article IV which permits the city to "establish such further regulations and restrictions upon the issuance of and operations under local licenses not inconsistent with law as the public good and convenience may require * * *" (Ill. Rev. Stat. 1973, ch. 43, par. 110) authorizes the County to pass the ordinance here in question.

In *Heidenreich,* the supreme court held that a county could not regulate retail liquor establishments by licensing bartenders since this authority was not specifically within the powers stated in article IV of the Illinois Liquor Control Act to prohibit certain conduct, *e.g.,* the employment of women and minors, nor justified as a regulation which was reasonably necessary to effectuate the prohibition stated in the Act. In *Emm,* the court held that a county could not legislate that no liquor license should be granted to any person "whose principal business is the sale at retail of groceries, meat products and/or drugs."

It does not necessarily follow, however, that plaintiff is correct in extending the reasoning of these cases to equate the lack of power in a county to deny the issuance of a liquor license to one in the retail grocery, meat or drug store business, or the lack of power to license bartenders, with a similar lack of power to deny a license or the right to continue to operate under a license to a tavern which offers nude dancing as entertainment. To reconcile and give meaning to the statutory scheme as a whole, it is necessary to conclude that the legislature intended to confer upon local authorities within their jurisdiction, the power to regulate liquor licensees beyond the few specific options mentioned when such regulation is reasonably necessary to make effective the delegated power to regulate retail liquor establishments by nondiscriminatory provisions consistent with the public good and convenience. Any other reasoning would give no meaning to the language which gives local authorities

power to regulate such establishments for the public good and convenience.

The necessity for giving effect to the language relied upon by the County is illustrated by the case of *Picco v. Simon* (1967), 80 Ill.App.2d 277, 280-281. The court held that a municipality could impose frontage consents as a requirement for the issuance of a liquor license under the "further regulations" language referred to in section 1 of article IV of the Liquor Control Act, since the regulation did not prohibit any person or class from obtaining a license and was uniform in its operation and required for the public good and convenience. Similarly here the regulation does not deny a license to any person or class not specified in the enabling statute (*Emm v. Sopher* (operators of a grocery store)) but rather is aimed at the regulation of conduct; and it does not seek to establish a new system of licensing employees parallel to the provisions of the Illinois Liquor Control Act (*e.g., Heidenreich v. Ronske* (separate licensing of bartenders)).

The regulation must be further examined, however, to determine whether the county resolution is reasonably necessary to make effective the power granted to make "further regulations * * * as the public good and convenience may require."

■■ The type of conduct prohibited by the resolution, if constitutionally permissible, is consistent with the public good as that term is used in the statute. The enabling section itself limits the employment of women and minors; and the prohibition on nude dancing is within the realm of conduct which has traditionally been regulated in the licensing of dramshops. See, *e..g, Cermak Club, Inc. v. Illinois Liquor Control Commission* (1963), 30 Ill.2d 90; *Evans v. Daley* (1970), 121 Ill.App.2d 196 (abstract opinion); *Weinstein v. Daley* (1967), 85 Ill.App.2d 470, 481.

It also should be noted that a license can be revoked for violation of local ordinances and the issuance of a license can be denied if the applicant has had his license revoked for cause. (Ill. Rev. Stat. 1973, ch. 43, pars. 120(7), 149.) Thus, it is obvious that a liquor licensee's conduct is subject to a broad panorama of regulation. It would be inconsistent to hold that a local authority could not regulate a licensee directly under the Illinois Liquor Control Act but for the specific types of conduct mentioned, but may do so generally by ordinance or resolution pertaining to matters such as immoral conduct. The nature of dramshop operations requires them to be regulated and restricted more rather than less than the general public or other commercial enterprises. See, *e.g., Walgreen Co. v. Garland* (1942), 316 Ill.App. 635, 643; *Weinstein v. Daley* (1967), 85 Ill.App.2d 470, 481.

Plaintiff next contends that the county resolution is unconstitutional

because it violates first amendment freedoms and offends both procedural and substantive due process.

The argument made as to the first amendment is principally based upon the United States Supreme Court decision in *California v. La Rue* (1972), 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390. Plaintiff argues that the Lake County resolution is more restrictive than the regulation of the California Department of Alcoholic Beverage Control which was upheld in *La Rue*. The difference between the two in terms of substantive restrictions is that the live, simulated or pictorial display of breasts and buttocks is proscribed in the Lake County resolution but was not forbidden in the California regulation. Plaintiff argues that the additional restrictions of the Lake County ordinance "encompass many types of conduct and dress that in no way can be considered obscene, indecent or suggestive of the type of conduct sought to be prevented by California. The Lake County regulations preclude the display of what may be considered ordinary skin as well as more esoteric parts of the body"; and "would preclude from taverns many art works and decorations never conceived to be in the ambit of the California regulations or Supreme Court decision in the *La Rue* case." Plaintiff also argues that even *La Rue* does not completely override first amendment rights, that the restriction on first amendment rights in the instant case is too great (citing *United States v. O'Brien* (1968), 391 U.S. 367, 20 L.Ed.2d 672, 88 S.Ct. 1673), and that the legislative body must achieve its legitimate concerns by means which have a less drastic impact on first amendment freedoms citing *United States v. Robel* (1967), 389 U.S. 258, 19 L.Ed.2d 508, 88 S.Ct. 419, and *Shelton v. Tucker* (1960), 364 U.S. 479, 5 L.Ed.2d 231, 81 S.Ct. 247.

The County responds that *La Rue* permits the county to regulate conduct without the confines of decisions as to obscenity and communicative conduct; that the legislative authority has granted wide latitude as to choice of means to accomplish a permissible end; that plaintiff's nude dancing partakes more of gross sexuality than of communication; and that the added presumption of validity of regulations in the area and liquor traffic require that we hold the Lake County resolution nonviolative of the constitution.

Plaintiff agrees that obscenity per se is not the issue, but contends that whether the proscribed acts are obscene goes to the question of the reasonableness of the county resolution.

██ Plaintiff argues both that the resolution is unconstitutional as applied and is on its face overbroad. The principal issue in the litigation has been directed at the prohibition of nude dancing. Insofar as the county resolution prohibits nude dancing, we conclude that it is constitutional. The regulation in *La Rue* would prohibit nude dancing and it

was upheld. Under the reasoning of *La Rue* even ordinances prohibiting topless dancing in dramshops have been upheld. (*City of Seattle v. Hinkley* (1973), 83 Wash.2d 205, 517 P.2d 592; *Paladino v. City of Omaha* (8th Cir. 1972), 471 F.2d 812; *Manos v. City of Green Bay* (E.D. Wis. 1974), 372 F.Supp. 40; *Cherbonnie v. Kugler* (D.N.J. 1973), 359 F.Supp. 256.) Recently, in *Paul A. Richter & Associates, Inc. v. Superior Court of California* (1973), 414 U.S. 1044, 38 L.Ed.2d 335, 94 S.Ct. 548, the supreme court denied (without opinion) a liquor licensee's writ of mandate challenging a ban on nude dancing performances in licensed premises as applied to allegedly non-obscene performances. (See *Manos v. City of Green Bay*, 372 F.Supp. 40, 47.) We also note that states have greater power to regulate nonverbal physical conduct than to suppress depictions or descriptions of the same behavior. (*Miller v. California* (1973), 413 U.S. 15, 37 L.Ed.2d 419, 431, 93 S.Ct. 2607; *Peto v. Cook* (S.D. Ohio 1973), 364 F.Supp. 1, 2.) Thus, under the *Miller* standards nude dancing even in establishments which do not serve alcoholic beverages may be proscribed when devoid of serious expressive value and designed for commercial exploitation of sexuality. *Starshock, Inc. v. Shusted* (D.N.J. 1974), 370 F.Supp. 506.

■■ The conclusion we have reached, that the forbidding of nude dancing in taverns is constitutional, does not encompass a finding that all other provisions of the ordinance could similarly withstand an attack on a constitutional basis. Particularly subsection 5 of the resolution which prohibits the display of pictures which display buttocks or breasts would, in our view, post serious constitutional questions if the county attempted to enforce it. (See *Peto v. Cook*, 364 F. Supp. 1, 3-4.) But we consider section 5 to be severable from the remaining parts of the ordinance, since it appears obvious the county desires to proscribe in dramshops the conduct described in sections 1-4 regardless of the validity of section 5. (*Henrys v. Raboin* (1946), 395 Ill. 118, 124—6; See also 16 Am.Jur.2d *Constitutional Law* §§ 181-183 (1964).) We have thus given recognition in our opinion to the fact that the plaintiffs' interests throughout has been in protecting its right to carry on nude dancing as the trial court found in its order.[1]

Plaintiff contends that the county's procedure in amending its liquor control ordinance offended procedural due process because there were no public hearings or findings of a connection between the conduct proscribed and criminal activity or sordid conduct. Plaintiff contrasts with

---

[1] The trial court's order of dismissal contains a finding "since the regulations referred to are not challenged on their face for overbreadth, no purpose would be served by attempting at this time to give them any construction."

the County's procedures in the instant case the California Department of Alcoholic Beverages Control which led to the regulation scrutinized in *California v. La Rue,* 409 U.S. 109, 34 L.Ed.2d 342, 93 S.Ct. 390.

■■ Plaintiff, however, fails to cite any authority that a legislative body must hold hearings or make findings before it can validly enact an ordinance or resolution which it otherwise is competent to enact. Although the revocation of a liquor license which entails a loss of a substantial investment may require certain procedural safeguards (*Manos v. City of Green Bay,* 372 F.Supp. 40), plaintiff's license is not being revoked and the Illinois liquor license revocation procedure (Ill. Rev. Stat. 1973, ch. 43, par. 149) which does contain procedural safeguards, is not here in question. Procedural due process provides safeguards to persons whose property or other rights may be deprived pursuant to powers conferred by general acts of government; it does not apply to actions which are political in their nature and which lie within the legislative province. *Cf.* 2 Am.Jur.2d *Administrative Law* §§ 279, 281 (1962).

Plaintiff's argument directed at a deprivation of substantive due process is based on its claim that the resolution is an unreasonable exercise of the police power. It argues that the resolution will substantially end its business with no evidence that the county ordinance promotes or will promote a legitimate legislative end.

■■ The legislature has wide discretion in the enactment of laws for the protection of public health, safety and morals or the promotion of the general welfare. (*People v. Warren* (1957), 11 Ill.2d 420, 424-5.) The regulation of liquor businesses must be pursuant to a legitimate exercise of the police power (*Shoot v. Illinois Liquor Control Commission* (1964), 30 Ill.2d 570, 575.) But the State may impose regulations on liquor traffic more stringent than would be permitted in other businesses. *Shoot v. Illinois Liquor Control Commission* (1964), 30 Ill.2d 570, 574-5; *California v. La Rue,* 409 U.S. 109, 34 L.Ed.2d 342, 349-50, 93 S.Ct. 390.

In *Henson v. City of Chicago* (1953), 415 Ill. 564, the Illinois Supreme Court upheld a local ordinance preventing females from bartending unless related to the licensee, as a reasonable exercise of the police power since the restriction tended to safeguard the morals of the females and the public. It would follow that the restriction of sexual displays and simulations thereof in a place where alcoholic liquor is sold for consumption on the premises tends to promote and protect the good morals of the public. See *Weinstein v. Daley,* 85 Ill.App.2d 470, 481-482.

■■ A regulation passed by a municipal body in pursuance of competent statutory authority is presumptively valid. (*Henson v. City of Chicago,* 415 Ill. 564, 570.) When the legislative act is derived from the police power the court must be able to see that it tends in some degree towards

the prevention of offenses or the preservation of the public health, morals, safety or welfare. (*Henson v. City of Chicago*, 415 Ill. 564, 570.) It seems apparent here that there is the sufficient connection between the provisions of the law which proscribe nude dancing in a liquor establishment and the purpose of protecting the moral welfare of the public.

■■ Plaintiff has also argued that the Lake County liquor control ordinance cannot properly be amended by a resolution or other act of less dignity than another ordinance. The trial court in its extensive findings concluded that the Lake County liquor control "ordinance" uses the term "ordinance" and "resolution" throughout seemingly interchangeably; that no reference is found to the manner in which amendments are to be made; and that where the charter of a municipality is silent as to the mode in which the governing body shall perform an act, its decision may be evidenced by either resolution or ordinance. We agree with the conclusions of the trial court. See *Houston v. Village of Maywood* (1956), 11 Ill.App.2d 433, 439.

■■ While it has been stated that resolutions are merely statements of opinion or ministerial acts and ordinances are necessary for municipal legislation of a continuing nature (*Village of Gulfport v. Buettner* (1969), 114 Ill.App.2d 1, 9), this is not true where the enabling statute does not require an ordinance to enact legislation. (*Houston v. Village of Maywood*, 11 Ill.App.2d 433, 439; *Village of Hoffman v. Meier* (1972), 4 Ill. App.3d 949, 952.) The enabling statute here in question authorizes counties to adopt liquor control legislation either by resolution or by ordinance. Ill. Rev. Stat. 1973, ch. 43, par. 110.

For the reasons stated we affirm the order of the trial court.

Affirmed.

T. MORAN, P. J., and RECHENMACHER, J., concur.